We are very happy to have District Court Judge Schrader sitting with us today from the Eastern District of Texas. We appreciate his service. Our first case for argument today is 23-1537 Intel Corporation v. PACT. Mr. O'Quinn, please proceed. Thank you, Chief Judge Moore, and may it please the Court, John O'Quinn on behalf of Intel. The Board committed a fundamental methodological error that permeates its decision by requiring a specific teaching or suggestion in the asserted prior art grounds to treat a low battery determination as a triggering event for reducing clock speed, rather than address how the background knowledge of a skilled artisan informed the broad general teachings of Bhatia as required by KSR. That alone requires remand, but this Court should simply reverse because applying KSR, this is a straightforward case for obviousness for a simple limitation that distills to reducing power when a device is low on power. The Board found, as a factual matter, that the petition was attempting to use Klein, the petitioner, to supplement a missing element. That's a question of fact we have to review for substantial evidence. Why are they wrong? So first, Chief Judge Moore, I'm not sure that's actually a factual determination as opposed to a methodological one in the sense that we... But they're making a determination about what your argument is in the petition? I'm not aware of this Court treating that as being a factual question. And if you look at, for example, at cases like Provisio where Vicor versus Simcor, you know, it's a violation of the APA where the Board doesn't address, where the Board misapprehends a party's argument. I think this case is very analogous to this Court's decision in Ariosa where this Court concluded at least a remand was required, where the Court recognized that the Board was not necessarily actually making a determination of whether or not this was background knowledge that a skilled artisan would have had in reading and interpreting the prior reference. And so here... But they did. They expressly took into account whether this was background knowledge and they stated so in the opinion. So Chief Judge Moore, when you look at page... I think you're referring to page 53 of the opinion. And what the Board does is it goes on to say, even if we were to consider Klein as providing such knowledge as contemplated by Ariosa, we further agree with Patent Owner Petitioner does not persuasively explain that knowledge would have led a person to reduce clock frequency according to battery state. And the reason that they conclude that is they say that there's not evidence that one would analogize the low battery condition to an over-temperature condition. And what the Board is doing here is two things. First, it is limiting BACIA to its teachings about thermal management. I mean, our simple modest argument was that BACIA describes different types of events. It describes... Triggers. BACIA describes triggers. Different types of triggers. But it doesn't disclose low battery mode. It does not disclose low battery mode. It discloses a genus of triggers. It just refers to environmental changes. And our argument was that a skilled artisan with the background knowledge that they... You don't think this is a fact question? You don't think it's a fact question whether one of skill in the art would think that when BACIA talks about triggers, it's nonetheless also disclosing... Are you saying it's disclosing or just a skilled artisan would find obvious that this is a different trigger? So a skilled artisan would find obvious that low battery was a trigger. Klein specifically says that low battery is a trigger. Can I just ask, why didn't you put that in the ground? I don't understand. So Chief Judge Moore, the argument that we were making is not that there's anything to be changed about how... I mean, it doesn't disclose low battery as a trigger. Does not disclose it. I agree with that. It does. So why didn't you put it in the ground? It seems to me this is a poorly drafted petition and you want us to save you from yourself. So Chief Judge Moore, respectfully, I think the argument that we made was that there's nothing here that changes. And we're not making an argument that changes... There's no doubt it's an element. It's an element. Isn't it an element of the claim? Detection of low battery mode trigger sys event? I agree that that has to be... There's a specific element of the claim, yes? It is an element of the claim. And you agree that neither BATIA nor NICL disclose that element, correct? I agree that they don't disclose that. What they disclose, what BATIA discloses, is that environmental triggers, including triggers of going to battery power, for example, are triggers that a skilled artisan would know from BATIA means go to a low power mode. And our argument for the board, we weren't trying to change how BATIA operates. Our argument wasn't that BATIA operates differently. It's just what a skilled artisan, with the background knowledge that they have in reading BATIA, understand that environmental changes include the most basic, and we argued this specifically at Appendix 261, include the most basic of if you have a low power condition, that that is a reason to reduce power. And we ultimately didn't rely on BATIA for how you move to a low power condition and rely on BATIA for lowering clock frequency. What about on page 54? Again, the board seems to have made fact findings on page 54. You pointed to 53, but they seem even more expressed on 54 about the differences between BATIA and Klein's low power mode triggering. And they explain why they expressly don't find it obvious to do so, to use BATIA to import in the low power mode trigger. So Chief Judge Moore, I think this analysis, I think you're referring to the top of 54, where the board ultimately, it concludes that Klein is used not for describing the state of the art, but for teaching what it refers to as a missing element. It's not just that it refers to it. You referred to it as a missing element. I referred to it as a missing element. We all referred to it as a missing element. You admitted it is not an element present in either of the two references. So it is therefore a missing element. Right, and the question is, when a person of skill in the art, at the time, with the background knowledge that they had, reads the specific reference in BATIA to environmental changes, would they understand that this includes a low battery condition? And that is exactly the issue that this court remanded over in Ariosa. In Ariosa, the board, to the extent that the court recognized that to the extent that the board had made a factual finding, this is not something a person of ordinary skill in the art would have known, that that of course would be deserved deference. But to the extent that the board was instead not considering it to illuminate how the other prior art references should be read, but instead that the board was treating it as though it needs to be part of the combination, that that is wrong. And that's wrong under KSR. This court made clear in Randall v. Rhea that the inquiry not only permits, but it requires consideration of common knowledge. And we are relying on Klein to illustrate not only what that common knowledge was, but that it illuminates BATIA and that a skilled artisan reading BATIA at the time would have understood that those environmental changes, those received events, include one that goes to low power. And this really is sort of... You're now morphing and saying they would have understood this to include low power. So you're saying BATIA discloses low power, not that low power would be obvious to a skilled artisan in light of what BATIA discloses, but your argument is now that BATIA actually discloses it? Well, my argument, Chief Judge Moore, is that a skilled artisan with BATIA in hand would understand that a low battery trigger is exactly the kind of trigger that BATIA is referring to. No, it doesn't explicitly disclose it in the same way that if I have a blender and say a blender can be used for blending bananas and strawberries and such, but it doesn't explicitly say that the blender can be used for blending raspberries, a skilled artisan who knows that raspberries can be blended, you're not changing how the blender is being used. Do you want to move on to your ACPI argument? Sure, I'd be happy to. I think the Board committed another methodological error in treating this as improper rebuttal evidence. Our use, first of all, ACPI, of course, was disclosed in the petition itself. Our use of ACPI in reply or in rebuttal was exactly the way that this Court sanctioned in ONACOR, that is, that this Court approved in ONACOR, page 1380, where the Court said the petitioner in an IPR proceeding may introduce new evidence after the petition stage if the evidence is legitimate reply or if it is used to document the knowledge that skilled artisans would bring to bear in reading the prior art identified as producing obviousness. And that's exactly what we were using ACPI for. ACPI is referred to throughout BACIA itself, and we are then using ACPI to show that a skilled artisan with BACIA in hand... On page 16 of your brief, Mr. O'Quinn, you expressly state that BACIA incorporates by reference to ACPI. Do you understand what the term incorporate by reference is in patent context? I do, and I understand it's more commonly an anticipation concept. I'd like you to show me where, since you understand what BACIA means by incorporation by reference and you didn't hedge on that, I'd like you to show me where BACIA incorporates the ACPI by reference. Sure. So I'd refer you, among other places, to... Column 13, lines 29 to 40, describing when the system detects a power mode change in response to the power management module, writing to predetermined control register... I'm sorry. Column 13, line 40? I'm sorry. Lines 29 through 40, that paragraph. Where does it say it incorporates it by reference? Well, Chief Judge Moore, this court has never held that it has to use the words incorporate by reference. It's just whether a skilled artisan would understand that it's... Actually, we do. Incorporation by reference is a patent term of specific meaning. Do you know what it means? To incorporate something by reference means that you expressly incorporate it by reference. Where do they do that? Yes, so Chief Judge Moore... Then that document is subsumed within this document. Its entire nature is subsumed. All of its teachings are subsumed. When something is incorporated by reference, we treat it as if it is now part of and fully encapsulated in this existing document. So in advanced display, 212F3 at 1283, this court said that to determine whether or not it's incorporated by reference, you assess what an ordinary skilled artisan would find to be incorporated. It's not that it... I'm not arguing, nor is there a statement in the Haccia reference that says we incorporate all of the ACPI by reference. That is not the argument that we are making. But instead, it is as this court said in Husky Injection, 838F3 at 1248, we assess whether a skilled artisan would understand the host document to describe with sufficient particularity the material incorporated. And I think what you have here with this... Are you now saying that only particular material is incorporated? Or like your brief, do you claim all of BATIA was, all of ACPI was incorporated by reference in BATIA? Chief Judge Moore, we certainly didn't mean to suggest that all of ACPI was... You stated it. You didn't mean to suggest it. You stated it on page 16. BATIA also incorporates by reference the ACPI specifications. Yeah. I apologize if we were... I apologize for being too imprecise. My point was exactly consistent with this court's case law, that those aspects... What aspects? Not all of ACPI was incorporated by reference now, is what you're saying. So which portions were incorporated by reference and how do I know which portions? Yes. Because in your brief, you say it's all incorporated by reference. You don't delineate particular portions and say only these portions and here's why. So Chief Judge Moore, I'm pointing again specifically to column 13, lines 29 through 40 with respect to the incorporation of ACPI's interrupts. The very first interrupt that's identified by ACPI, this is at appendix 3285, is where it defines the concept of an interrupt, is a system control interrupt to inform the operating system of power status. For example, a device can trigger an interrupt to inform the operating system that the battery has reached low power. That is from ACPI and I'm referring to the interrupts here at column 13. I think that there's a similar passage in the middle of column 12 making specific reference around line 45 to how ACPI events are used. I see I'm well into my rebuttal time. I'm happy to answer additional questions or I'd like to reserve the balance of my time for rebuttal. Okay. You can reserve the balance of your time. Thank you, Chief Judge Moore.  Mr. Weisburs? Weisburs, yes, Your Honor. Okay, please proceed. May it please the court, Sanford Weisburs for the appellee, packed. I'd like to begin with the board's decision. Our position is that the board engaged in fact finding on this question. Unlike in Ariosa, where the- I understand that it isn't listed in the grounds, but it wasn't as though you were blindsided by their sudden reference to Klein. It is mentioned in the petition. Agreed. On the other hand, just as an aside, ACPI is not mentioned in this portion of the petition, but Klein we acknowledge is. I think what the board did was the board didn't say we're not going to address Klein. That's what happened in Ariosa. The board said we're not going to address this reference that was not part of the combination. The board did address Klein. The board found as a finding of fact how a skilled artisan would or would not use Klein to interpret Batya. That's where the key passage in Batya is on Appendix 2360, Column 12. That's where Batya talks about over-temperature, which is certainly the main thrust of Batya. Batya also talks about some power supply transitions. The board here considered both of those. I'd like to point the court to a portion of the board's decision that has not been discussed so far at Appendix 50. Just to be clear, I took it that Mr. Quinn's point about Batya is not limited to the power supply transition. That's one item in a list under a more general category of environmental conditions, which clearly not limited to overheating, docking, undocking, power supply transition. I took the point of at least the reference of 261 in the petition to be that an ordinary artisan would in fact understand this somewhat general category of environmental conditions, which is not limited to overheating, to include you're now on battery. You better check how much you have. That question we respectfully submit is itself a question of fact. We look at the word environmental changes in Column 12 of Batya, again, Appendix 2360. The board was entitled to interpret that term. The board gets deference on its interpretation of the scope of prior art. The board is entitled to interpret that term in light of what follows. Yes, maybe one possible interpretation would be environmental changes or other events or these open-ended catch-all terms that get you anywhere you want to go. Another interpretation, the one the board adopted, however, is that environmental changes is limited to what follows. There are canons of interpretation, aeustum, generis, nocitur, associis. That's basically what the board was doing here. It was saying, we're not going to just blow up this term into being an all-encompassing term. We're going to interpret it in light of the other terms that surround it. What we are going to find, as a matter of fact, is that this is limited to over-temperature, power supply transitions, and there's another mention of user commands and system usage. That's how the board interpreted this. Even assuming that that's what the board was saying, how is that reasonable? It's reasonable because it follows a standard interpretive approach in statutory interpretation and patent interpretation, which is that sometimes terms that might otherwise seem broad are interpreted by the surrounding terms. That is what the board did here. This is a little miscellany of various environmental conditions that could affect whether, for example, the purpose of lowering your consumption of power would want to change from one high drain to low drain method of proceeding. Yes. I'm not contesting that that is a possible interpretation. I think that there are two possible interpretations here, and I think it's also important, and I'd like to refer the court to Appendix 3408, which is actually from the ACPI specification. When one brings battery power into the mix, it's yet another variable that has to be traded off. You've got temperature, you've got power consumption, and you now have battery. Another reason why a skilled artisan and the board, in reading Column 12 of FATIA, could decide, well, battery threshold is not within this list. It's because that introduces a whole complex set of other issues that would be difficult to solve for a skilled artisan. So, you've got both the statutory interpretation canon of Nocetur Associis Justum Generis, and you also have this policy scientific concern about bringing an entirely new variable into play, and the board could reasonably, and as a matter of fact, resolve that question, and this court should review that for substantial evidence. Now, the board also, as to power supply transitions, which I would submit is the leading other event besides The board specifically found, at Appendix 54, we agree with Pat and Donor that a power supply transition is different from moving below a battery threshold. And I just want to pause a moment on that issue. So, what is a power supply transition? It's when you unplug or plug something into the wall. So, it's an abrupt shift of alternating current power from the wall versus battery. The board specifically found, as a matter of fact, that that's different from the battery being used and falling below a threshold. And that, again, is a finding of fact. What's your best evidence that changing to a power supply transition really is different and distinct from low power mode? Yes, Judge Schrader. I think that the best evidence we have is sort of the abrupt nature of it, right? So, when you go below a battery threshold, the battery is being used, and then it eventually runs out below a threshold. On the other hand, a power supply transition doesn't say anything about how much charge is in the battery. It just says you're going from one power source to another. And one can actually see, if we flip back a few pages in Batya to Figure 1, you see how this is diagrammed. And this is important also because this is really the lone explicit mention of battery in Batya, is this figure, as well as a sentence describing it. So, if we look at Appendix 2341, we see on the upper right corner, battery versus external source outlet. What power supply transition is about is switching from one of those elements to the other. It's not about how much charge is in one versus the other. It's about a switch from one to the other. And the board was within its rights to that. One of them, there's infinite supply still. The other, there's a quite finite supply. And everybody would know that. And I think the patent itself says detecting available battery power is something everybody knows how to do. That doesn't use those terms, but it says well known in the art. So, how could this actually be meaningfully distinguished when you're looking at these environmental conditions? What's this great additional either technical or tradeoff problem that would mean that an ordinary skilled artisan would not think of this? Sure. So, first of all, the patent does state along the lines of what Judge Charanto, you said. However, it does not go the further step and say, and then you would adjust clock frequency downward. So, I just want to make that clear. But in terms of why. I'm sorry, this patent? The 301 patent that's at issue that was challenged here. I thought that's what the claim says. The claim, no, yes. In the specification when it's describing what was known in the prior art before that patent. Oh, it doesn't. It says, yes, people know how to detect battery threshold, but it does not say in the prior art that people knew that it would go below. So, just to make that clear. In terms of why is this different? I think it goes back to the recognition in ACPI, among other places, that battery life versus thermal requirements versus power consumption are complicated variables. And Batia itself, just on over temperature, which is its main focus, has a bunch of mathematical formulas of how to draw that balance. So, if you're adding another variable into the mix and you're tracking, okay, battery life is going down. When are we going to send a signal and adjust clock frequency? That we submit and the board found, we think as a matter of fact, is different from a change of the power supply from one to the other. Now, could a reasonable fact finder have possibly found another way? Possibly. But under the substantial evidence standard, the board can choose between one of two reasonable approaches. I'd like to briefly turn to ACPI. I think it's important here that the petition on Claim 8, and I'd refer the court to Appendix 259 to 262. That's the portion of the petition that talks about Claim 8, which is the main claim that we're here before you today, does not cite ACPI. It does cite Klein, does not cite ACPI. For the first time in the reply, ACPI was cited, and they cited the battery management sections of ACPI. In our brief, we've explained that Batya itself, to the extent it references ACPI, is talking about processor power management sections, which are separate from the battery management sections. So, we do not believe that the standard for incorporation by reference has been met. But in any event, even if it has been met as to processor power management, it has not been met as to battery power management. I think it's also important to recognize that the board did not stop with its holding that this was improper reply argument. The board went on to address it on the facts, and the board found, among other things, that the battery in the ACPI specification is a smart battery or a control method battery. It is not a generic battery. Batya, on the other hand, does not make reference to a smart battery or a control method battery, but only to a generic battery. And again, it's only in that one short reference in the figure, as well as one sentence in the specification. We think that, too, supports why the board could find that battery threshold is not to be read into this overarching term, such as other events or environmental condition. Briefly, on the question of whether a skilled artisan would just use common sense, we don't think that's the standard. Cases like KSR and Arendi hold that the standard is whether a skilled artisan would find that it has common sense, not whether. Can I just double-check one of these? So you, I think, referred at the beginning of your argument about kind of an ordinary language interpretation principle, and there's a list. Sometimes everything has to be like kind. But here, the last clause of the phrase is for other event. Quite, quite general. Other event, not or other, some narrower term that might, in a more limited way, characterize what is shared by the previously mentioned items. Why? First of all, I think that that, respectfully, I think that is the context in which that interpretation is often applied. Where the last term in a series is a broader, is a facially broader term. I'm not making myself clear. It always occurs where it's facially broader. The question is, how much broader? Typically, the situation is where the last term is broader than the individual preceding items, but is nevertheless a kind of defined genre of some sort. And that tells you that even that term is supposed to take its definition from what came before. But event is like thing. It's just a temporal version of thing. It's infinitely broad. I think, here's how I'd approach that question. Let me try it again. Again, focusing on Appendix 2360, Column 12, we kind of see two lists of things. One starts at about line 14. That one begins with the words other events. And then you've got another list that starts at about line 33. And that's the one that ends with other event. Now, if you compare those two lists, the word, so the first time around, it's saying what other events means. Right? Other events is what's starting the process. And then it lists some things like over temperature, power supply transitions. The second time around, other events comes at the end. Now, I think it's interesting that in the first list but not in the second list, they specifically call out coupling or discoupling of the external source port. That is not specifically called out in the second list. And I think that's another reason why the board could say, okay, well, what does other event mean in the second list? It must mean coupling or discoupling because they omitted that from the second list of things. Now, again, I'm not arguing this is the only possible interpretation. But I do think that other events, particularly given the first list, which starts with those words and then defines it by what comes next could inform how that word is used in the second list. And I think that's a plausible interpretation that the board could adopt here. Unless the court has further questions, I'd ask that the board be affirmed. Okay, thank you, Mr. Weiss. Mr. Quinn, you have rebuttal time. Thank you, Chief Judge Moore. The board's methodological error here is that the board did not consider how Klein informs how a skilled artisan at the time would read Boccia's general category of environmental changes. You can look through the board's opinion. They don't address it. I would agree that if the board came to the conclusion that a skilled artisan would not read environmental changes as encompassing battery, that that would be a fact question that this court would review for substantial evidence. I would say substantial evidence would be lacking in that. But that's what the board didn't do. That is what makes this case just like Ariosa. And that's what, at a very bare minimum, requires a remand. And part of why the board didn't do that is because the board was focused on Boccia itself and looking for a teaching or suggestion from Boccia. It says that at Appendix 52, 54, at Appendix 55 twice, and again at Appendix 58. And I think that other event language that you were referring to, Judge Toronto, notably that exact same language appears in the 301 at Appendix 114. Let me just understand. You argued to the board that Klein's detection of low battery condition is another type of environmental change like Boccia. You argued this expressly to the board, right? That's correct. At Appendix 261. Yeah, I know. I have it open right here. They instead sided with the petitioner and said that they didn't agree with your argument and they agreed with the patent owner's argument that it would not be included, didn't they? Isn't that what they thought? I don't think that's a fair reading of the board's opinion. I think that what the board did is treated it as though this was a part of a combination. And if you look at the red brief at pages 22 to 24, that is exactly... regarding your argument about whether or not Klein's detection of a low battery mode is a environmental change like those disclosed in Boccia, such that a skilled artisan would have... I don't. I think that the board was looking at whether or not Klein could be combined. And that, again, tellingly, if you looked at pages 22 to 24 of the red brief, that is exactly how PAC defends the board. That was the board's error. And then the last point that I would make is that with respect to the use of ACPI in reply, it was used exactly as this court reversed the board for failing to consider and address in this court's decision an AMC versus fall line for all of these reasons. And again, starting with the board, really focusing on Boccia itself repeatedly as needing to provide the teaching or suggestion. Contrary to the Supreme Court's decision in KSR, the board's decision should be vacated and either remanded or outright reversed. I'm happy to answer any additional questions the court may have. Okay. Thank you. I thank both counsel. This case is taken under submission.